## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

NGENA FOUNDATION,

      Plaintiff,

   v.

F&R CROUS FOUNDATION,

      Defendant.

Civil Action No. 20-793 (CKK)

## MEMORANDUM OPINION
(April 20, 2021)

Plaintiff Ngena Foundation filed a Complaint against Defendant F&R Crous Foundation on March 23, 2020, alleging that Defendant breached its contract with Plaintiff by failing to perform on its guarantee for a loan repayment agreement. Compl. ¶¶ 19–20, ECF No. 1. Although properly served with the Complaint and Summons, Defendant failed to respond to the Complaint, and the Clerk of the Court entered default against Defendant on September 18, 2020. *See* Clerk's Entry of Default, ECF No. 13. Pending before the Court is Plaintiff's [15] Motion for Default Judgment ("Pl.'s Mot."). Upon consideration of Plaintiff's submissions, the attachments thereto, the relevant legal authorities, and the record as a whole, the Court **GRANTS** Plaintiff's Motion for Default Judgment.

## I.   BACKGROUND

Plaintiff Ngena Foundation, a non-profit organization, entered into a Loan Agreement with Ocean Security International ("OSI") in November 2014, in which Plaintiff agreed to loan OSI $500,000 and OSI agreed to repay the loan, with an annual interest rate of 9% for the first year and 12% for subsequent default years, by November 2015. Compl. ¶¶ 7–8; *see* Compl. Ex. B, Loan Agreement by and between OSI and the Ngena Foundation ("Loan Agreement"), ECF No. 1-2. The Loan Agreement also included a guarantee by Defendant to ensure repayment of the loan.

Compl. ¶ 9; Compl. Ex. C, Memorandum of Undertaking passed on October 29, 2014

("Memorandum of Undertaking"), ECF No. 1-3 ("[Defendant] guarantees that if in such a case

that [OSI], for whatever reason, cannot fulfill its obligations with regards to the repayment of the

loan . . . [Defendant] will repay the outstanding capital and interested balance owed by [OSI] to

[Plaintiff]."). On July 20, 2016, Defendant again provided a guarantee to Plaintiff. Compl. ¶ 12;

Compl. Ex. A, Mutual Cooperation and Release Agreement ("MCR Agreement") § 2, ECF No.

1-1 ("[Defendant] shall be liable for the remaining portion of the Loan Amount not satisfied by

[OSI]."). According to the Complaint, however, OSI repaid only $1,904 of the amount owed to

Plaintiff, with an outstanding balance of $498,096, plus interest, still due. Compl. ¶ 13.

On June 18, 2019, the parties entered into a Tolling Agreement, in which Defendant was

given additional time to "raise funds to pay the Loan Amount" and both parties agreed to toll all

statute of limitations and other time-related defenses. *Id.* ¶ 14; Compl. Ex. D, Tolling and

Standstill Agreement ("Tolling Agreement") at 1, ECF No. 1-4. However, in November 2019,

after repeatedly requesting Defendant to pay the outstanding loan amount without success, Plaintiff

provided Defendant with the required 30-day notice of its intent to terminate the Tolling Agreement

and initiate legal proceedings against Defendant. *See* Compl. ¶¶ 15–17.

Plaintiff commenced the present action on March 23, 2020, claiming that it is entitled to

damages of $498,096 for the outstanding loan amount, as well as pre-judgment and post-judgment

interest and reasonable attorneys' fees and costs. *Id.* ¶ 21. Defendant was properly served with

the Complaint and Summons on May 29, 2020, and therefore was obligated to respond by June

19, 2020. *See* Aff. of Return Serv., ECF No. 8. The parties then engaged in settlement negotiations

and filed a joint motion for an extension of time for Defendant to file an answer to the Complaint,

*see* ECF No. 9, which the Court granted and ordered Defendant to file its response by July 20,

2020, *see* July 1, 2020 Minute Order.  When Defendant did not file an answer by July 28, 2020, the Court ordered Defendant to file a response to the Complaint by August 14, 2020, or "risk possible default actions."  July 28, 2020 Order, ECF No. 10.  Defendant nonetheless failed to file an answer or otherwise respond to the Complaint.  On September 9, 2020, the Court ordered Plaintiff to "file for default or take other appropriate action to prosecute these claims or the Court will dismiss the case without prejudice for want of prosecution."  Sept. 9, 2020 Order, ECF No. 11.[1]  On September 18, 2020, the Clerk of the Court, upon receiving Plaintiff's request for entry of default, *see* ECF No. 12, entered default against Defendant, *see* Clerk's Entry of Default. On September 30, 2020, Plaintiff filed the pending Motion for Default Judgment.  As of the date of this Memorandum Opinion, Defendant has not entered an appearance in this case.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the clerk of the court "must enter [a] party's default" when a "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  Once a default has been entered by the clerk, a court may enter a default judgment against that party pursuant to Rule 55(b).  *See* Fed. R. Civ. P. 55(b).  The "determination of whether default judgment is appropriate is committed to the discretion of the trial court."  *Int'l Painters & Allied Trade Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."  *Int'l Painters & Allied Trade Indus.*

---

[1] The Court mailed a copy of this order to Defendant, but it was returned as "undeliverable."  *See* ECF No. 14.  Plaintiff emailed a copy of the Order to Defendant on September 30, 2020.  *See* Pl.'s Mot. at 3 n.1.

*Pension Fund v. R.W. Armine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (citation omitted). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.* (citing *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). In ruling on such a motion, "the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.* (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). The moving party is "entitled to all reasonable inferences from the evidence offered." *Id.* (citation omitted).

### III.    DISCUSSION

Defendant has failed to answer the Complaint or otherwise defend this action. Consequently, the Clerk of the Court entered default pursuant to Rule 55(a). Plaintiff now moves the Court to grant a default judgment against Defendant pursuant to Rule 55(b). Specifically, Plaintiff seeks a monetary award for the outstanding loan amount, pre-judgment and post-judgment interest, and reasonable attorneys' fees and costs. The Court concludes that the standard for default judgment has been satisfied and that Plaintiff is entitled to damages and reasonable attorneys' fees and costs.

### A.  Default Judgment

To warrant default judgment, the defendant "must be considered a 'totally unresponsive' party, and its default plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment." *Auxier Drywall*, 531 F. Supp. 2d at 57 (quoting *Gutierrez v. Berg Contracting Inc.*, No. 99-3044, 2000 WL 331721, at *1 (D.D.C. Mar. 20, 2000)). Where, as here, there is a complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the

standard for default judgment has been satisfied." *Id.* (internal quotation marks and citation omitted); *see United States v. Bentley*, 756 F. Supp. 2d 1, 3 (D.D.C. 2010) (same).

In the present case, the Clerk of the Court entered default against Defendant, and therefore the factual allegations in the Complaint are taken as true. *See R.W. Amrine Drywall*, 239 F. Supp. 2d at 30. The Court finds that Plaintiff's Complaint sufficiently alleges facts to support its breach of contract claim against Defendant. Under D.C. law, a claim of breach of contract includes four elements: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 168 (D.D.C. 2013) (citation omitted); *see* MCR Agreement § 11 ("This Agreement shall be governed by the laws of the District of Columbia."). Here, the Complaint alleges that the parties entered into an agreement in which Defendant guaranteed to repay Plaintiff the outstanding loan amount not paid by OSI. Compl. ¶ 12; MCR Agreement § 2 ("[Defendant] shall be liable for the remaining portion of the Loan Amount not satisfied by [OSI]."). Defendant was therefore obligated to pay Plaintiff when OSI defaulted and repaid only $1,904 of the $500,000 loan amount. Compl. ¶¶ 8, 13. Defendant then breached this obligation when it failed to perform on its guarantee to Plaintiff, resulting in damages suffered by Plaintiff as it remains unpaid for the outstanding loan amount of $498,096. *Id.* ¶¶ 20, 21. Accordingly, the Court concludes that Defendant is liable to Plaintiff for the outstanding loan amount plus interest at the rates specified in the parties' agreement. *See* Loan Agreement §§ 8.2, 8.4.

## B. Damages & Interest

Although the default establishes Defendant's liability, the Court must make an independent determination of the sum to be awarded unless the amount of damages is certain. *See Adkins*, 180 F. Supp. 2d at 17. In making such a determination, the Court may conduct a hearing, *see* Fed.

R. Civ. P. 55(b)(2), but it is not required to do so if the Court "ensure[s] that there [is] a basis for the damages specified in the default judgment," *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (alterations in original) (citation omitted); *see also Adkins*, 180 F. Supp. 2d at 17 (stating court may instead "rely on detailed affidavits or documentary evidence to determine the appropriate sum"). The district court has "considerable latitude" in deciding the amount of damages. *Boland*, 763 F. Supp. 2d at 67 (citation omitted).

The Court concludes that Plaintiff has produced competent evidence—in its Complaint and the exhibits attached thereto—that Defendant is liable to Plaintiff for the outstanding loan amount, plus the 9% interest rate provided prior to default and the 12% interest rate after default, as agreed upon in the underlying agreements. *See* Loan Agreement §§ 8.2, 8.4 ("The parties agree that OSI will repay the loan and all the [9%] interest in full within twelve (12) months. . . . [I]f the loan and all interest is not repaid within the year . . . then OSI will be liable to pay a default interest of 3% above the interest rate . . . on any outstanding amount of the loan."); Memorandum of Undertaking at 1 ("[Defendant] guarantees that if in such a case that [OSI], for whatever reason, cannot fulfill its obligation with regards to the repayment of the loan . . . [Defendant] will repay the outstanding capital and interest balanced owed by [OSI] to [Plaintiff]."). The operative agreement between the parties provides "sums certain" because it requires Defendant to ensure repayment of the outstanding loan amount, with the specified interest rates. *See Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 474 (D.D.C. 1984) (awarding monetary damages when plaintiff's affidavit set forth a calculation of the requested damages that the court was able to ascertain as accurate); *Boland*, 763 F. Supp. 2d at 69 (concluding that a declaration submitted by plaintiffs from someone with "personal knowledge of the facts" was sufficient to establish damages with reasonable certainty). Accordingly, the Court shall award Plaintiff damages in the amount of

$498,096 for the outstanding loan amount and $369,064.62 for the pre-judgment interest amount.[2] *See* Loan Agreement §§ 8.2, 8.4 (providing the applicable interest rates); Rebecca L. D. Gordon Aff. ("Gordon Aff.") ¶ 9, ECF No. 15-1.

Plaintiff also seeks post-judgment interest, to be determined at the time of payment. *See* Pl.'s Mot. at 2, 6; Compl. ¶ 21. Under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court[,]" and that "[s]uch interest shall be calculated from the date of the entry of judgment[.]" 28 U.S.C. § 1961(a). Application of § 1961(a) is mandatory, not discretionary. *See, e.g.*, *Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 287 (D.D.C. 2012). Although parties may contract around § 1961(a), "to do so, they must specifically contract around the general rule that a cause of action reduced to judgment merges into the judgment and the contractual interest rate therefore disappears for post-judgment purposes." *Qatar Nat'l Bank v. Winmar*, 813 F. Supp. 2d 163, 167 (D.D.C.), *vacated in part on other grounds*, 831 F. Supp. 2d 159 (D.D.C. 2011) (quoting *In re Riebesell,* 586 F.3d 782, 794 (10th Cir. 2009) (internal citations and quotation marks omitted)). To satisfy this standard, the parties' contract must expressly state that the chosen interest rate specifically applies to judgments or judgment debts. *See FCS Advisors, Inc. v. Fair Fin. Co*., 605 F.3d 144, 148 (2d Cir. 2010) (holding that § 1961 applied where the parties' agreement failed to specify that the selected interest rate applied to either judgements or judgment debts).

---

[2] Plaintiff's counsel provided an estimate of the pre-judgment interest amount in Plaintiff's Motion filed on September 30, 2020, which calculated the amount of interest through that date. *See* Gordon Aff. ¶ 9. The Court calculated the figure provided here by applying (1) a 9% interest rate to the outstanding loan amount for the first year after default; (2) a 12% interest rate to that same amount until OSI paid $1,904 to Plaintiff on July 20, 2016; and (3) a 12% interest rate to $498,096 (the principal minus the amount repaid by OSI) through the date of the Court's Order granting Plaintiff's Motion for Default Judgment, April 20, 2021.

Here, the Court finds that the parties' agreement does not meet this standard. The Loan Agreement states that "if the loan and all interest is not repaid within the year . . . then OSI will be liable to pay a default interest rate of 3% above the [annual] interest rate [of 9%] on any outstanding amount of the loan." Loan Agreement §§ 8.2, 8.4. It further specifies that the agreement shall "endure from the effective date until the loan and cost of capital is repaid to [Plaintiff] in full." *Id.* § 9.2. These provisions, however, do not explicitly state that the specified interest rates apply to "judgments" or "judgment debts." *Qatar Nat'l Bank*, 813 F. Supp. 2d at 167. Accordingly, the Court shall set the post-judgment interest rate in accordance with § 1961(a), which directs that the rate be "equal to the weekly average 1-year constant maturity Treasure yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." § 1961(a). For the calendar week preceding the date of this Memorandum Opinion and accompanying Order, that rate is 0.06 percent. *See* H.15 Selected Interest Rates, Federal Reserve, https://www.federalreserve.gov/releases/h15/ (last accessed Apr. 20, 2021). The Court shall therefore award Plaintiff post-judgment interest at that rate, with the amount to be determined at the date of payment.

## C. Attorneys' Fees

Next, the Court considers Plaintiff's argument that it is entitled to attorneys' fees and costs for both the court-related litigation and the settlement negotiations related to this matter. Pl.'s Mot. at 7. Plaintiff filed in support of its Motion an affidavit of Rebecca Gordon, counsel with the law firm Arnold & Porter Kay Scholer LLP, which represented Plaintiff in this action. *See generally* Gordon Aff. According to Ms. Gordon's affidavit, the total sum for attorneys' fees and costs is $72,564.07. *See id.* ¶ 15 (accompanying table with breakdown of costs). Specifically, Plaintiff requests a monetary award that includes $34,796.49 for litigation and default-related expenses and

8

$37,767.58 for the fees and costs incurred from engaging in settlement negotiations with Defendant. *Id.* ¶¶ 15–16.

As an initial matter, the Court finds that Plaintiff is entitled to attorneys' fees and costs based on the underlying agreement.  The MCR Agreement explicitly states that "[i]n the event of any dispute arising from [] this Agreement . . . the *prevailing Party shall be entitled . . . to recover* from [the] non-prevailing Party the *reasonable attorneys' fees and costs*."  MCR Agreement § 4 (emphasis added).  By obtaining a default judgment against Defendant, Plaintiff qualifies as a "prevailing party" entitled to such an award. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks and citation omitted) (stating plaintiffs are "prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit").  Accordingly, the Court finds Plaintiff has established that it is entitled to $34,796.49 for litigation and default-related attorneys' fees and costs.

Plaintiff also seeks to recover the costs associated with "attempting to settle the dispute outside of court," and Ms. Gordon's affidavit represents that the costs and fees related to settlement negotiations amount to approximately $37,767.58.  Pl.'s Mot. at 7; Gordon Aff. ¶ 15.  First, the Court notes that it is not unusual for courts to include settlement negotiation expenses as part of the monetary award for attorneys' fees and costs. *See, e.g.*, *Mich. v. E.P.A.*, 254 F.3d 1087, 1096 (D.C. Cir. 2001) (finding travel fees incurred during settlement negotiations "reasonable" and declining to deduce the award for attorneys' fees for such items); *Weisberg v. U.S. Dep't of Just.*, No. CV 75-1996, 1987 WL 11984, at *11 (D.D.C. May 28, 1987) (permitting plaintiff's counsel to include hours spent on settlement negotiations in its motion for attorney's fees).  Moreover, the operative agreement between the parties indicates that Plaintiff is entitled to expenses incurred

outside of litigation.  *See* MCR Agreement § 12 ("In the event of any dispute arising from or related to this Agreement, *whether such dispute involves litigation or not*, the prevailing Party shall be entitled . . . *to recover* from [the] non-prevailing Party the reasonable attorneys' fees and costs.").

Accordingly, the Court shall award Plaintiff $72,564.07 in attorneys' fees and costs, which includes the costs and fees incurred by Plaintiff in this litigation, as well as those incurred while attempting to reach a settlement agreement with Defendant.

## IV.    CONCLUSION

For the reasons provided herein, the Court finds that Plaintiff has met all necessary preconditions to obtain a default judgment against Defendant and that a default judgment is appropriate on this record.  The Court therefore **GRANTS** Plaintiff's [15] Motion for Default Judgment.  An appropriate Order accompanies this Memorandum Opinion.

Date: April 20, 2021

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

10